UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

**MEMORANDUM & ORDER**

-against-

**08-CR-833 (NGG)**

MYRON GUSHLAK,

Defendant.

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

## I. BACKGROUND

On November 18, 2010 the court imposed on Defendant Myron Gushlak ("Gushlak") a sentence of 72 months in the custody of the Attorney General and a $25 million fine, and stated that it would enter an order of restitution within 90 days of sentencing pursuant to 18 U.S.C. § 3664(d)(5). On December 20, 2010, the Government submitted a letter to the court in which it indicated that, based on its review of the records of trades made by holders of GlobalNet stock, Defendant owes restitution to the victims of his fraud in the amount of $20,468,876.29. (Gov't Restitution Letter (Docket Entry # 21) at 1.) The Government submitted those trading records under separate cover to defense counsel, but not to the court. (GlobalNet Trading Records Cover Letter of Dec. 20, 2010 (Docket Entry # 20).) The Government sent a second set of trading records to Defendant in a second letter, dated January 10, 2011, but did not send those records to the court either. (Rich Earth Trading Records Cover Letter of Jan. 10, 2011 (Docket Entry # 23).) Relying on United States v. Catoggio, 326 F.3d 323, 328 (2d Cir. 2003), the Government argues that the court may rely on the trading records to determinine the amount of loss suffered by the victims of Defendant's crimes because the records identify the victims of Defendant's fraud and their respective losses. (Gov't Restitution Letter at 2.)

1

Defendant argues the court should follow Judge Gleeson's decision in the case of Howard Appel, Defendant's coconspirator in the GlobalNet fraud, to calculate the amount of restitution using only the amount of loss suffered by victims who submitted affidavits of loss. (Def.'s Letter of Jan. 3, 2011; Def.'s Letter of Jan.7, 2011; see also Order, United States v. Appel, 04-CR-505 (JG) (E.D.N.Y. May 20, 2008).) Defendant contends that the doctrine of collateral estoppel should bar the Government from re-litigating the amount of pecuniary loss suffered by the victims of the GlobalNet stock fraud conspiracy previously determined by Judge Gleeson in Appel. (Def.'s Letter of Jan.7, 2011 at 2.) Because Defendant was not a party to the Government's prosecution of Mr. Appel , Defendant asks the court to apply the doctrine of nonmutual collateral estoppel against the Government. In the alternative, Defendant argues that the Government has miscalculated the amount of pecuniary loss attributable to the victims of Defendant's crimes based on the Government's own trading records. (Id. at 2-3.) In support of this argument Defendant offers the opinion of a putative expert that the Government has miscalculated the amount of pecuniary loss (id. Ex. A), and provides a side-by-side comparison of the Government's alleged amounts of loss with what the putative expert alleges to be the correct calculation of the amount of loss (id. Ex. B).

## II. DISCUSSION

### A. Nonmutual Collateral Estoppel

Defendant has not cited any case on point for the proposition that, "the Government should be estopped from attributing to him an amount of loss any greater than the amounts previously found by the district court in his coconspirator['s] case[]." United States v. Pierce, 409 F.3d 228, 233-34 (4th Cir. 2005). The Fourth, Fifth, Eighth, Ninth, and Eleventh Circuit Courts of Appeal have determined "that the civil doctrine of nonmutual collateral estoppel has no

application in criminal sentencing." See id.; United States v. Montes, 976 F.2d 235, 239-240 (5th Cir. 1992); United States v. Wood, 22 F. App'x 668, 668 (8th Cir. 2001); United States v. Elfand, 1 F. App'x 650, 653 (9th Cir. 2001); Demar v. United States, 228 F. App'x 940, 949 (11th Cir. 2007).

In similar cases, the Second Circuit has strongly suggested that it would reach the same result. In United States v. United States Currency in the Amount of $119,984, 304 F.3d 165 (2d Cir. 2002), the Second Circuit reversed the district court's grant of summary judgment for the claimant in a civil forfeiture proceeding based on the district court's finding during the claimant's prior criminal sentencing proceeding that the funds allegedly subject to forfeiture were derived from a lawful source. The Court of Appeals reiterated its holding that "'precluding relitigation on the basis of [sentencing] findings should be presumed improper.'" Id. at 172 (quoting SEC v. Monarch Funding Corp., 192 F.3d 295, 306 (2d Cir. 1999)). Consequently, Defendant may not use Judge Gleeson's sentencing findings in Appel to preclude the Government from relitigating the amount of pecuniary loss to the same group of victims in this case.

Moreover, Defendant appears to argue that the Government should be precluded from relitigating what he assumes were Judge Gleeson's *legal* conclusions in deciding not to permit the Government to rely on trading records under Catoggio. (See Def.'s Letter of Jan. 3, 2011 at 1.) While the court is not bound by Judge Gleeson's interpretation of the law in a prior case, it may rely on his reasoning as persuasive authority. The court's review of the public docket in Appel reveals that some portion of the record before Judge Gleeson in that case, as well as documents disclosing Judge Gleeson's reasoning in relation to the Catoggio issue, assuming it was litigated before him, remain under seal. The Government shall review the sealed portions of

the record in Appel, including redacted documents and transcripts, and shall file a letter with the court under seal, by January 20, 2011, identifying the documents which relate to Judge Gleeson's determination to use only victim affidavits in calculating the amount of pecuniary loss caused by Mr. Appel's conduct.  At that time the court will take any additional steps that may be necessary after consulting with Judge Gleeson.

**B.    Use of Trading Records to Determine Amount of Pecuniary Loss**

Even if the court were to find that Catoggio permits the Government to prove the amount of loss attributable to the crime by relying on trading records, the Government's submissions to the court thus far have failed to meet its burden.   The Government has not explained to the court its methodology for calculating the amount of pecuniary loss, nor has it provided the court a copy of the trading records on which it purports to rely.  Indeed, the Government has not even provided the court with a list of Defendant's victims.  Without such information the court cannot readily identify the victims of Defendant's crimes, cannot determine the amount of pecuniary loss suffered by each victim, and cannot determine that the aggregate amount of loss calculated by the Government accurately reflects the "actual loss" suffered by each victim.  See United States v. Carboni, 204 F.3d 39, 47 (2d Cir. 2000).

Accordingly, the Government shall file, by January 28, 2011:  (1) a memorandum setting forth its methodology for calculating the amount of loss attributable to each victim; (2) for *in camera* review under 18 U.S.C. § 3664(d)(4), a list or spreadsheet identifying the victims of Defendants crimes and the amounts of pecuniary loss attributable to each; and (3) a declaration under 28 U.S.C. § 1746, by someone with knowledge, swearing to the provenance, reliability, and accuracy of the records on which the Government's calculations are based.  On January 28, 2011, the Government shall separately provide the court with a courtesy copy of the trading

records on which it bases its calculations, in electronic form as a Microsoft Excel spreadsheet, for *in camera* review by the court. The Government may also file with the court any other materials that it believes would be helpful to the court in determining the victims' losses. In any documents publicly filed with the court, the Government shall take steps that may be necessary to protect the privacy of victims' records. <u>See</u> 18 U.S.C. § 3664(d)(4) ("The privacy of any records filed, or testimony heard, pursuant to this section shall be maintained to the greatest extent possible, and such records may be filed or testimony heard in camera.").

Defendant shall file any submission in reply by February 4, 2011. Because the court must enter an order of restitution by February 16, 2011, under 18 U.S.C. § 3664(d)(5), absolutely no extensions of time will be granted.

SO ORDERED.

|  |  |
|---|---|
| Dated: Brooklyn, New York<br>January 14, 2011 | <u>/s/ Nicholas G. Garaufis</u><br>NICHOLAS G. GARAUFIS<br>United States District Judge |