

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

WK/PAL/KMT                           *271 Cadman Plaza East*
F. #2011R00826                       *Brooklyn, New York 11201*

April 10, 2019

<u>By Hand and ECF</u>

Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Myron L. Gushlak
           <u>Criminal Docket No. 03-0833 (NGG)</u>

Dear Judge Garaufis:

      We write to notify the Court regarding the improper conduct of Alan S. Futerfas, an attorney appearing in the above-referenced criminal case. As set forth below, the government has learned that Futerfas aided and abetted his client, Myron L. Gushlak, in resisting and disobeying a lawful order of this Court and violated Rule of 8.4(d) of the New York State Rules of Professional Conduct, which provides that "[a] lawyer or law firm shall not . . . engage in conduct that is prejudicial to the administration of justice."[1] Specifically, Futerfas, counsel for Gushlak in the above-captioned matter, transferred out of his attorney escrow account more than $1.1 million belonging to Gushlak <u>after</u> the Court ordered Gushlak to pay a $25 million criminal fine "immediately" as part of the criminal sentence imposed at Gushlak's sentencing hearing on November 18, 2010. As further discussed below at pages 5-7, the government respectfully submits that, based on the conduct described below, the Court may, at its discretion, hold Futerfas in civil contempt until such time as he repays the funds he assisted Gushlak in diverting.

      We enclose herewith copies of the transcripts of the sentencing hearing dated November 17, 2010 and November 18, 2010 as Exhibits 1 and 2, respectively. We also provide, as Exhibit 3, a copy of an "Escrow Ledger Client Page" provided by Futerfas, indicating the

---

[1] We provide this information pursuant to Rule 8.3(a) of the New York State Rules of Professional Conduct, which provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

Hon. Nicholas G. Garaufis
April 10, 2019
Page 2

dates and amounts of the transactions by which Futerfas disposed of $1,135,149 belonging to
Gushlak between February and May 2011.

I.       Background of the Criminal Case and $25 Million Fine

         By way of background, on July 22, 2003, Gushlak pleaded guilty in the above-
referenced criminal case to one count of conspiracy to commit securities fraud, in violation of
Title 18, United States Code, Section 371, and two counts of conspiracy to commit money
laundering, in violation of 18 U.S.C. § 1956(h).  As part of his plea, Gushlak admitted to
participating in a stock pump and dump scheme with respect to Global Net, a publicly traded
telecommunications company of which Gushlak was a partial owner.  This scheme took place
from early 1999 through the end of 2000.  During this time period, Gushlak sold approximately
1.1 million shares of Global Net stock at artificially inflated prices.

         On November 18, 2010, following the two days of hearings referenced above, the
Court sentenced Gushlak principally to 72 months in prison and a fine of $25 million.  Futerfas,
in his capacity as counsel for Gushlak, was present throughout the sentencing, including at the
time when the Court pronounced sentence on November 18, 2010, ordering, among other things,
that the $25 million fine was due and payable "immediately":

         THE COURT: On count one, I sentence you to 60 months in the
         custody of the Attorney General, which is the statutory maximum,
         and that will be concurrent with the sentence that I will now
         impose on count two.

         On count two, I sentence you to 72 months in the custody of the
         Attorney General.  I am imposing a fine of $25 million payable
         immediately.  I am imposing a period of supervised release of three
         years on the two counts.  There is a special assessment of $200.
         Restitution will be finalized within 90 days.

         The following special conditions apply to your supervised release:
         You must comply with the restitution order.  You must pay the fine
         as ordered by the court.  You will provide full financial disclosure
         to the Probation Department.  You shall not possess a firearm,
         ammunition or destructive device.

         If you are excluded from the United States in a separate proceeding
         brought by the U.S. Department of Homeland Security, you may
         not reenter the United States illegally.

         With regard to the payment schedule and restitution, the fine is due
         and payable immediately in a lump sum, as I said; however, the
         court will make a determination of the actual amounts of loss
         suffered by the victims of your offenses and will enter an order of

Hon. Nicholas G. Garaufis
April 10, 2019
Page 3

> restitution within 90 days of today's date, under Title 18 United
> States Code, Section 3664(d)(5).
>
> Under Sentencing Guideline 5E1.1(c) any funds obtained from the
> defendant in payment of sum [sic] or all of the fine shall be
> retained until such time as the court enters an order of restitution.
> <u>When the court enters an order of restitution, the funds obtained
> from the defendant shall first be applied to satisfy the order of
> restitution before being applied toward defendant's fine</u>.[2]

Exhibit 2, Transcript of November 18, 2010, proceedings, 115:23 – 117:5 (emphasis added).[3]

II.     <u>Futerfas's Dispersal of Gushlak's Money After Sentencing</u>

        Within just a few months following this Court's imposition of the $25 million fine
against Gushlak on November 18, 2010, Futerfas received $1,140,000 belonging to Gushlak in
his attorney escrow account.  <u>See</u> Exhibit 3.  These were funds that had been put up in
connection with Gushlak's bail in a New York State case.  <u>See id.</u>  Futerfas then used the escrow
account to rapidly dispose of $1,135,149 of those funds (hereinafter the "Escrow Funds").  Many
of the recipients of the Escrow Funds are familiar to Your Honor.

        For example, on March 31, 2011, Futerfas transferred $210,125 of the Escrow
Funds to EH&P Investments AG ("EH&P"), a financial institution located in Switzerland.  <u>See
id.</u>  EH&P was discussed during the sentencing hearing on November 17, 2010.  <u>See</u> Exhibit 1 at

----

[2] On May 15, 2012, the Court issued a Restitution Order directing Gushlak, among other
things, to pay $17,492,817.45 in restitution, pursuant to 18 U.S.C. § 3663A of the Mandatory
Victims Restitution Act.  <u>See</u> Restitution Order, Docket Entry 107.

[3] As indicated above, at the November 18, 2010, proceedings Your Honor stated that the
Court "was not going to determine restitution for 90 days," <u>id.</u> at 105:1 – 3, and indicated that the
Court would "be happy to hear from [any victims] prior to issuing a final judgment including
restitution."  <u>Id.</u> at 105:21 - 23.  Litigation ensued over the appropriate amount of restitution to
be ordered.  At the request of Gushlak, who required a written Judgment and Commitment Order
("J&C") to accomplish two goals that were important to him – to be transferred out of the
Metropolitan Detention Center and to file an application for prisoner transfer to Canada (<u>see</u>
March 17, 2011 letter (ECF No. 38)) – on May 9, 2011, the Court issued a J&C without
specifying the amount of restitution it would order Gushlak to pay (ECF No. 47).  Following
further litigation on the matter, on April 20, 2012 the Court issued a Memorandum & Order
determining that Gushlak was required to pay $17,492,817.45 in restitution (ECF No. 104).  The
November 18, 2010 sentence was amended to include the imposition of restitution, pursuant to
the May 15, 2012 Restitution Order discussed <u>supra</u> at footnote 2.

Hon. Nicholas G. Garaufis
April 10, 2019
Page 4

62:18 – 69:24. As the Court may recall, EH&P was the financial institution involved in the transfer of assets worth approximately $50 million belonging to Gushlak into the "Crossroads Trust," an irrevocable trust set up in a foreign country. See id. The transfer of these assets into the Crossroads Trust – which Futerfas asserted made them basically unavailable for the payment of a fine or restitution (see id. at 67:11 – 14) – took place after Gushlak pleaded guilty, yet prior to sentencing.[4]

In multiple transactions between March and May 2011, Futerfas additionally directed $104,024 of the Escrow Funds to Yelena Furman.[5] Ms. Furman was Gushlak's girlfriend at the time of the receipt of the Escrow Funds. As Your Honor may recall, Your Honor held Ms. Furman in contempt of court for failing to comply with a subpoena issued in the action In Re: Application of Debbie Gushlak, 11-MC-00218 (NGG)(JO) (E.D.N.Y.). See Docket Entry 90, Order of Contempt, dated April 30, 2012.[6] As we previously notified the Court (see letter, dated December 8, 2017, Docket Entry 130), Ms. Furman is also Gushlak's co-defendant in United States of America v. Yelena Furman and Myron Gushlak, 17-CR-20713 (Altonaga, J.) (Southern District of Florida) (the "SDFL Criminal Case").[7]

Futerfas directed $50,000 of the Escrow Funds to Gushlak's son Ryan as well as an additional $50,000 to Purdue University, where Ryan was a student at the time. See Exhibit

---

[4] We respectfully refer the Court to the defendant's November 15, 2010 reply sentencing memorandum, which was signed by Futerfas, for additional discussion of EH&P and its ownership of four "omnibus accounts," in which Gushlak had an interest. See Defendant's Reply Sentencing Memorandum, dated November 15, 2010, at pp. 11-13 (explaining EH&P's ownership of "Lakki Enterprises Corp., Parone Real Estate, Inc. and Surelis Management.").

[5] A check for $50,000 was issued to Ms. Furman on March 7, 2011, and another check for $25,000 was issued to Ms. Furman on March 11, 2011. An additional $25,000 was applied to Ms. Furman's American Express credit card, account *1009, on March 17, 2011. A final check for $4,024 was issued to Ms. Furman on May 10, 2011.

[6] Gushlak's former spouse, Debbie Gushlak, initiated this action pursuant to 28 U.S.C. § 1782 to take discovery in the EDNY in aid of litigation taking place in a foreign jurisdiction, i.e., the divorce litigation between Debbie and Myron Gushlak taking place in the Cayman Islands. It should be noted that Futerfas disbursed $250,000 of the Escrow Funds to a Cayman National Bank account, for the benefit of Samson & McGrath. Samson & McGrath was the law firm that represented Myron Gushlak in the divorce litigation.

[7] Ms. Furman and Gushlak were charged in the SDFL Criminal Case with, inter alia, obstructing official proceedings with respect to enforcement of the criminal monetary penalties imposed in the above-referenced criminal case from October 2010, through at least on or about September 8, 2014. Ms. Furman ultimately pleaded guilty to other charges in the SDFL Criminal Case pursuant to a plea agreement, filed in the SDFL Criminal Case on January 23, 2018.

Hon. Nicholas G. Garaufis
April 10, 2019
Page 5

3.  Ryan was approximately 19 years old when he received or benefitted from these two disbursements, totaling $100,000.  Ryan, who is deceased as of 2013, was discussed in pre-sentencing submissions to the Court and at the November 2010 sentencing hearings.

Some of the disbursements of the Escrow Funds were also made directly to, or for the immediate benefit of, Gushlak.  For example, on March 17, 2011, Futerfas disbursed $50,000 to Gushlak's American Express Centurion Card, credit card number *2005.  See id.  At the time of the credit card payment, there was no balance owed on the credit card.  Additionally, on March 17, 2011, Futerfas directed $25,000 to account *99-73 at "CIBC," which appears to be Canadian Imperial Bank of Commerce.  See id.  It is unclear whether Gushlak had an account at that financial institution at the time of the disbursement.

In sum, as detailed in Exhibit 3, Futerfas used his attorney trust account to direct $1,135,149 of Gushlak's money to, among others, Gushlak's family, Gushlak's close associates, and financial and other institutions to which Gushlak had a connection.  All of these disbursements were made at a time when Gushlak was subject to a $25 million criminal fine, due and payable immediately, and at a time when the imposition of a substantial restitution order was anticipated.

III.    Legal Analysis

Futerfas has taken the position that his actions were not improper because, at the time of the disbursements of the Escrow Funds, the written judgment had not yet been entered on the docket in the above-referenced case.  This argument is unavailing.

First, the notion that a criminal sentence does not take effect until the written judgment is entered is contradicted by the well-settled rule that the oral pronouncement of a sentence – not the terms of the subsequent written judgment – controls.  As the Second Circuit has repeatedly explained, "[t]he only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant."  United States v. Marquez, 506 F.2d 620, 622 (2d Cir. 1974) (quoting United States v. Munoz-Dela Rose, 495 F.2d 253, 256 (9th Cir. 1974) (additional citations omitted)); see also, United States v. Ramirez, 344 F.3d 247, 255 (2d Cir. 2003) ("It is well-settled in this circuit that '[w]here an unambiguous oral sentence conflicts with the written judgment, . . . the oral pronouncement of sentence must control,' . . . for it is 'the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence.  The written commitment is mere evidence of such authority.'") (citations omitted).

Second, Futerfas's actions are contrary to his obligations as an officer of the court.  The facts of this matter are similar to, but more egregious than, the facts of Lamb v. Cramer, 285 U.S. 217 (1932).  In Lamb, the defendant in a suit to set aside certain conveyances of property gave some of the property at issue to her lawyer, supposedly as a legal fee.  285 U.S. at 218.  The Supreme Court held that the lawyer could properly be held in contempt, even though it appeared no explicit court order had been violated, because the lawyer's "receipt and diversion of the property, which was then in gremio legis, tended to defeat any decree which the court

Hon. Nicholas G. Garaufis
April 10, 2019
Page 6

might ultimately make in the cause," and was therefore "in fraud of the rights of the plaintiffs to prosecute the suit to its conclusion, and an obstruction of justice constituting a contempt of court which might be proceeded against civilly." [8]  Id.

In this case, Futerfas's receipt and disbursement of the Escrow Funds similarly undermined the government's ability to enforce the criminal fine judgment that was ultimately entered against Gushlak.  Futerfas, as an officer of the court, is prohibited from engaging in this type of "obstruction of justice."  Id.; Rule 8.4, Cmt.3 ("The prohibition on conduct prejudicial to the administration of justice is generally invoked to punish conduct, whether or not it violates another ethics rule, that results in substantial harm to the justice system comparable to those caused by obstruction of justice []. . . .  The conduct must be seriously inconsistent with a lawyer's responsibility as an officer of the court.").

In light of the above-referenced authority, Futerfas's assertion that Gushlak's assets remained unencumbered even after this Court orally imposed sentence, but before it issued its written judgment, is frivolous.  As Futerfas was aware, the written judgment could do no more than memorialize this Court's oral pronouncement.  Futerfas's actions therefore aided and abetted Gushlak in avoiding and resisting this Court's lawful order.  See, e.g., F.T.C. v. Am. Nat. Cellular, 868 F.2d 315, 322 (9th Cir. 1989) (affirming criminal contempt conviction under 18 U.S.C. § 401(3) against defendant in civil action who transferred $110,000 of his assets on the same day he was served with a temporary restraining order freezing his assets); cf., e.g., Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996) ("Neither is it the case that parties are completely at liberty to undertake any action, even if it affects the subject matter of litigation pending before a court, simply because there is no court order expressly forbidding them from engaging in such action."); Griffin v. Cty. Sch. Bd. of Prince Edward Cty., Va., 363 F.2d 206, 211 (4th Cir. 1966) (holding, in context of funds expended in violation of anticipated court order,

---

[8] The Latin phrase in gremio legis is a "figurative expression describ[ing] something that is under the protection of the law. . . ."  Black's Law Dictionary (10th ed. 2014).  In Lamb, the property at issue was under the protection of the law because it was the subject of a lawsuit, the defendant's lawyer had acquired interest in the property during the pendency of that lawsuit, and "as counsel in the principal suit, had notice of the equities alleged" in the lawsuit.  See 285 U.S. at 219 (citations omitted).  Similarly, Futerfas, as counsel for Gushlak, knew of the pending criminal case against Gushlak and knew that Gushlak's property was subject to the $25 million criminal fine.  In the above-captioned criminal matter before this Court, the property was not merely identified as being at issue in the matter, as in Lamb.  Rather, at the time Futerfas transferred the Escrow Funds to Gushlak's family, friends and entities to which Gushlak was connected, the Court had already made the determination that all of Gushlak's property and all of his rights to that property would be subject to the $25 million criminal fine, once the written judgment had been entered on the docket.  See 18 U.S.C. § 3613(c).

Hon. Nicholas G. Garaufis
April 10, 2019
Page 7

that the "putting of the subject-matter of this litigation beyond our reach was a defiance of this court, an anticipatory resistance to its ultimate orders or process").

The government respectfully submits that Futerfas may be held in contempt of court for aiding and abetting Gushlak in disobeying the Court's order to pay his $25 million fine immediately.  See S.E.C. v. Durante, 641 F. App'x 73, 76 (2d Cir. 2016) (identifying findings necessary to support civil contempt); Weston Capital Advisors, Inc. v. PT Bank Mutiara, 667 F. App'x 15, 17 (2d Cir. 2016) ("'In order for a court to hold a nonparty respondent in contempt of a court order, the respondent must either abet the [party named in the order], or must be legally identified with him.'" (quoting CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016))); Backo v. Local 281, United Bhd. of Carpenters & Joiners of Am., 438 F.2d 176, 180–81 (2d Cir. 1970) (citing Alemite Mfg. Corp. v. Staff, 42 F.2d 832, 833 (2d Cir. 1930)); see also Lamb, 285 U.S. at 218.  Moreover, the Court has the power to initiate civil contempt proceedings against Futerfas, see S.E.C. v. Am. Bd. of Trade, Inc., 830 F.2d 431, 441 (2d Cir. 1987), which can be done with the issuance to Futerfas of an order to show why he should not be held in contempt of court and punished for his conduct, see, e.g., Huber v. Marine Midland Bank, 51 F.3d 5, 7 (2d Cir. 1995).  "Whereas criminal contempt requires proof beyond a reasonable doubt, civil contempt requires only proof by clear and convincing evidence . . . and does not require proof of willfulness."  Am. Bd. of Trade, Inc., 830 F.2d at 441 (citations omitted); see also id. at 439 (noting that court order instructing party to cease proscribed conduct "immediately" was sufficiently "specific and definite" to support finding of contempt).  The government respectfully submits that an appropriate civil remedy for Futerfas's contempt would be the imposition of a civil fine reimbursing the United States for the damages it suffered as a result of Futerfas's contemptuous conduct, in this case, $1,135,149, plus an appropriate amount of prejudgment interest.  E.g., New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989) (citing United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947)).  The government stands ready to appear for contempt proceedings, should the Court be satisfied that they are warranted.

Futerfas's conduct described above also violates the New York States Rules of Professional Conduct and his ethical obligations as an officer of the court.  Rule 8.4(d) provides, "A lawyer or law firm shall not … engage in conduct that is prejudicial to the administration of justice."  Under these circumstances – in which Futerfas assisted his client with avoiding compliance with the criminal sentence imposed by this Court and helped the client to conceal and disburse funds that should have been applied to the client's criminal monetary penalties – Futerfas has engaged in conduct that is prejudicial to the administration of justice.

Hon. Nicholas G. Garaufis
April 10, 2019
Page 8

The commentary to Rule 8.4 provides helpful guidance on this issue.  Comment 3 states, in relevant part:

> The prohibition on conduct prejudicial to the administration of justice is generally invoked to punish conduct, whether or not it violates another ethics rule, <u>that results in substantial harm to the justice system comparable to those caused by obstruction of justice</u>, such as advising a client to testify falsely, paying a witness to be unavailable, altering documents, repeatedly disrupting a proceeding, or failing to cooperate in an attorney disciplinary investigation or proceeding. . . . <u>The conduct must be seriously inconsistent with a lawyer's responsibility as an officer of the court</u>.

Rule 8.4, Cmt.3, New York State Rules of Professional Conduct.  (Emphasis added).

Futerfas's actions have caused "substantial harm to the justice system" and are "seriously inconsistent with . . . [his] responsibility as an officer of the court."  <u>Id.</u>  As cited above, this Court ordered Gushlak to pay a $25 million fine, "due and payable immediately," in part because, after pleading guilty but before his sentencing, Gushlak took efforts to render a large portion of his wealth judgment-proof by transferring it to a place outside the jurisdiction of the United States.  Despite the fact that the Court had called Gushlak to task for having engaged in this improper pre-sentencing conduct (<u>see</u> Exhibit 2, Transcript of November 18, 2010, proceedings, 110:16 – 111:22), Futerfas, through the actions described above, facilitated the continuation of this conduct after sentencing.[9]

Notably, the Court stated at sentencing, "When the court enters an order of restitution, the funds obtained from the defendant shall first be applied to satisfy the order of restitution before being applied toward defendant's fine."  <u>Id.</u> at 117:2 – 117:5.  Accordingly, by transferring the Escrow Funds from his attorney trust account to family, friends, and other entities to which Gushlak was tied, Futerfas made the assets unavailable to the victims of Gushlak's crimes.

Futerfas, as Gushlak's attorney throughout the proceedings in the above-referenced criminal case, was intimately familiar with the background of Gushlak's criminal conduct and sentencing.  Under these circumstances, any reasonable attorney would have refused to comply with a client's request or directive to deposit more than $1.1 million of the client's

---

[9]  In denying Gushlak's challenges to his conviction and sentence, and affirming this Court's judgment, the Second Circuit noted, among other things, Gushlak's pre-sentence securing of assets overseas.  The Second Circuit concluded that such conduct was a factor upon which this Court properly concluded that a large fine was necessary to dissuade Gushlak from committing future acts of business deception.  <u>United States v. Gushlak</u>, 495 F. App'x 132, 136-37 (2d Cir. 2012); <u>see</u> Exhibit 2, Transcript of November 18, 2010, proceedings, 113:7 – 114:17.

Hon. Nicholas G. Garaufis
April 10, 2019
Page 9

money in an attorney escrow account and distribute the money to the client's family, close associates and overseas financial institutions.  Instead, after Gushlak's sentencing, Futerfas helped Gushlak to avoid compliance with the obligations imposed upon him by this Court, including the payment of a fine and victim restitution.  The criminal justice system cannot condone such actions by an officer of the court.  See New York Rules of Professional Conduct, Preamble 1 (advising, in part, that "[a]s an officer of the legal system, each lawyer has a duty to uphold the legal process; to demonstrate respect for the legal system; to seek improvement of the law; and to promote access to the legal system and the administration of justice.  In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because, in a constitutional democracy, legal institutions depend on popular participation and support to maintain their authority."); Rule 8.4, Cmt.3.

    Finally, we note that the New York State Supreme Court, Appellate Division, 1st Judicial Department, has held that an attorney's use of her escrow account to help her client evade her client's creditors is a violation of Disciplinary Rule 1-102(A)(5), the identically worded predecessor to Rule 8.4(d).  See In re Pritikin, 105 A.D.3d 8, 959 N.Y.S.2d 162 (1st Dep't 2013) ("… respondent violated this rule by depositing a client's personal and business funds into his IOLA account in order to help the client avoid the attachment of various outstanding tax liens and judgments."); see also Matter of Gilbert, 220 A.D.2d 187, 642 N.Y.S.2d 711 (2d Dep't 1996).[10]

---

[10] It may also be that Futerfas's conduct involved dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c).  See, e.g.,  In re Kaplan, 113 A.D.3d 184, 188–89, 976 N.Y.S.2d 461 (1st Dep't 2013) (Appellate Division found a violation of Rule 8.4(c) where an attorney allowed "a nonlawyer to use his IOLA account as a means of sheltering funds from tax and judgment creditors"); In re Pritikin, 105 A.D.3d 8, 12, 959 N.Y.S.2d 162, 166 (1st Dep't 2013) (Appellate Division found a violation of DR 1-102(a)(4), the identically worded predecessor to current Rule 8.4(c)) ("insofar as the record demonstrates and respondent testified that he intentionally shielded the first client's funds from at least one tax lien, thereby engaging in dishonesty, fraud, deceit, or misrepresentation, respondent violated DR 1–102(a)(4)"); Matter of Gilbert, 220 A.D.2d 187, 642 N.Y.S.2d 711 (2d Dep't 1996) (Appellate Division found a violation of DR 1-102(a)(4), the identically worded predecessor to current Rule 8.4(c)) (attorney wrongfully deposited $500,000 of her client's money into a foreign bank account when she knew or should have known that the client "was in financial difficulty, and that the deposit into the bank … was fraudulent within the meaning of the United States Bankruptcy Code and the New York State Debtor and Creditor Law").

Hon. Nicholas G. Garaufis
April 10, 2019
Page 10


IV.      Conclusion

        As a result of Futerfas's conduct, we provide the Court with this submission to discharge our obligations under Rule 8.3(a) of the New York Rules of Professional Conduct.  We are available should the Court require additional information or analysis of pertinent legal issues.

        We thank the Court for its consideration of this letter.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:              /s/
           Whitman G.S. Knapp
           Peter A. Laserna
           Assistant U.S. Attorneys
           (718) 254-6107/6152
           whitman.knapp@usdoj.gov
           peter.laserna@usdoj.gov


c.c.:    Steven L. Kessler, Esq., counsel for Alan S. Futerfas (by Email and U.S. Mail)