

U.S. Department of Justice

United States Attorney
Eastern District of New York

AL/WK:KMT/PAL
F. #2011R00826

271 Cadman Plaza East
Brooklyn, New York 11201

June 24, 2019

By ECF
Hon. Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Myron L. Gushlak
             Criminal Docket No. 03-0833 (NGG)

Dear Judge Garaufis:

      The government writes in reply to Alan Futerfas's May 8, 2019 letter to the Court in response to the government's April 10, 2019 letter. (DE:148 ("Ltr.")). Over 20 pages, Futerfas concedes the only relevant fact at issue: that he, acting at the direction of his client, Myron Gushlak, disbursed more than $1 million belonging to Gushlak following, and with full knowledge of, the $25 million fine this Court imposed on Gushlak in connection with his criminal sentence in the above-cited case. Because Futerfas cannot contest that crucial fact, he instead blames the government for not using its enforcement authority to prevent him—an officer of the court—from taking an action of which the government was not aware. This is a disingenuous non sequitur that fundamentally misunderstands the scope of judicial authority and Constitutional separation of powers. It is apparent from Futerfas's submission that the counsel with whom he purportedly consulted in connection with the transactions at issue suffered from the same misunderstanding; counsel's advice is, in any event, of no legal significance here. See, e.g., United States v. Remini, 967 F.2d 754, 757 (2d Cir. 1992) ("[A]dvice of counsel is not a defense to the act of contempt. . . ."). Futerfas impeded this Court's ability to discharge one of its most important responsibilities and his arguments to the contrary should be rejected.

      Futerfas cites no authority for the central premise of his argument—that this Court's oral imposition of a criminal fine was of no legal consequence to him "before it [was] embodied in a judgment" (Ltr. 4)—and it is clearly incorrect. As an initial matter, and as set forth in the government's previous letter, it is well-settled that "it is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence." United States v. Ramirez, 344 F.3d 247, 255 (2d Cir. 2003) (emphasis added; internal quotation marks omitted). It is apparent that Futerfas understood this at the time of Gushlak's sentencing, because Futerfas did not protest his client's incarceration on the authority of the Court's oral sentence alone. (See 11/18/10 Tr. at 119). Following the

Hon. Nicholas G. Garaufis
June 24, 2019
Page 2

Court's oral pronouncement of sentence, Futerfas was no more entitled to disburse Gushlak's funds than he was to conceal Gushlak from the U.S. Marshals and Bureau of Prisons.

Moreover, Several Courts of Appeals have addressed and expressly rejected the argument urged by Futerfas. In <u>Schildt v. F.B.I.</u>, the Tenth Circuit considered the legal effect of a Utah state court's oral order preventing Schildt from taking his child out of the state. 113 F.3d 1247, *1 (10th Cir. 1997) (unpublished opinion).[1] In so doing, the court rejected the argument, made here by Futerfas, "that an oral order from a court of competent jurisdiction is somehow legally ineffective until it is reduced to writing." <u>Id.</u> at *2. The court held that "[t]he fact that the court's order in this case was oral does not diminish its force" and that, therefore, there was no legal basis to assert "that [Schildt] was free to disobey the order until it had been reduced to writing." <u>Id.</u> Indeed, the court acknowledged that a court order preventing some course of action would be rendered "meaningless" if it was of "no effect until written." <u>Id.</u> The same is true here, where Futerfas's legally unsupportable position would permit a defendant to move every penny of his wealth beyond the Court's reach so long as he did so before a written judgment had issued.

In <u>In re Bradley</u>, the Fifth Circuit assessed the legal effect of an oral order of the bankruptcy court directing a trustee not to dispose of certain assets — an order that, like a criminal sentence, the Federal Rules requires be reduced to writing. 588 F.3d 254, 257-59 (5th Cir. 2009). Following the court's oral order, but before entry of the written order approximately a month later, the trustee sold certain prohibited asserts and was later held in "compensatory" or "remedial" civil contempt. <u>Id.</u> at 259, 263. The Fifth Circuit rejected the contemnor's "main argument . . . that 'oral pronouncements . . . were not enforceable by contempt until commemorated in a written order. . . ." <u>Id.</u> at 261. The court recognized that, in some cases, an order must be reduced to writing to render it <u>appealable</u>, <u>id.</u> at 262, but that is an entirely separate issue from whether a party's "manifestly improper actions can render him liable for contempt," <u>id.</u> at 263. The court held that the conduct was plainly contemptuous because it "frusrat[ed]" the court's oral order and, indeed, "[w]ith proper procedures, . . . could support a criminal contempt conviction." <u>Id.</u> at 266.

These cases expressly address what is obvious from the body of cases addressing civil and criminal contempt sanctions. If a court is empowered to hold a defendant in criminal contempt for disobeying an oral order to answer a question during testimony, <u>United States v. Martin</u>, 525 F.2d 703, 707 (2d Cir. 1975); or to hold a lawyer in criminal contempt for disobeying an oral order not to ask a particular question on cross-examination, <u>In re Ellenbogen</u>, 72 F.3d 153, 156 (D.C. Cir. 1995), or for failing to be on time, <u>In re Niblack</u>, 476 F.2d 930, 933 (D.C. Cir. 1973); or to hold a lawyer in civil contempt

---

[1] Local Rules of the Tenth Circuit permit citation to unpublished decisions for their "persuasive value" to the "full extent of the authority found in" Federal Rule of Appellate Procedure 32.1.

Hon. Nicholas G. Garaufis
June 24, 2019
Page 3

for failing to appear for trial, In re Jaques, 761 F.2d 302, 305-06 (6th Cir. 1985); or to hold a witness in civil contempt for failing to testify before a grand jury pursuant to a grant of immunity, In re Grand Jury Investigation, 600 F.2d 420, 422 (3d Cir. 1979), it defies logic to assert, as Futerfas does, that the Court lacks authority to remedy Futerfas's knowing disobedience of the criminal sentence it imposed on Gushlak.  "[S]entencing is one of the most difficult—and important—responsibilities of a trial judge," see United States v. Thavaraja, 740 F.3d 253, 259 (2d Cir. 2014), and there can be no serious dispute that the Court has the authority to sanction counsel for disobeying one of its core authorities.

Futerfas's other legal theory—that an "intermediary" cannot be held liable for civil contempt under these circumstances (Ltr. at 1)—is equally meritless.  It is well-settled that "[n]onparties may be liable for civil contempt notwithstanding their nonparty status." Goya Foods, Inc. v. Wallack Mgmt. Co., 290 F.3d 63, 75 (1st Cir. 2002); see also Weston Capital Advisors, Inc. v. PT Bank Mutiara, 667 F. App'x 15, 17 (2d Cir. 2016) ("'In order for a court to hold a nonparty respondent in contempt of a court order, the respondent must either abet the [party named in the order], or must be legally identified with him.'" (quoting CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 98 (2d Cir. 2016))).  "[I]t has long been recognized that a nonparty may be held in civil contempt if, and to the extent that, he knowingly aids or abets an enjoined party in transgressing a court order."  Goya Foods, 290 at 75.  Futerfas cannot deny that both elements "essential to invocation of this theory" are "forgone conclusions" here: first, that he "kn[e]w of the judicial decree, and nonetheless act[ed] in defiance of it;" and, second, that he took "the challenged action . . . for the benefit of, or to assist, a party subject to the decree."  Id.  His status as an agent of his client does not shield him from liability for disobeying this Court's order.

Futerfas's attempt to blame the government for failing to initiate an enforcement action with respect to the funds he distributed is contrary to law. (Ltr. at 3).  As an initial matter, this argument is a concession by Futerfas that the funds he disbursed at Gushlak's direction were, in fact, subject to the fine imposed by the Court.  Putting aside the many factual inaccuracies in his letter, Futerfas cites no authority for a "legitimate expenses" exception on which he purports to rely, and the government is aware of no such exception in Title 18, Chapter 227, Subchapter B ("Fines") or the Court's order.

Moreover, Futerfas's concession that, prior to this Court's issuance of the judgment, the government "could have filed a 'notice of lien'" under 18 U.S.C. § 3613(d) is fatal to his argument.  (Id.).  Section 3613, after all, is solely an enforcement provision, which concerns "remedies for satisfaction of an unpaid fine."  Accordingly, under this provision, the executive branch's enforcement authority is derived entirely from the existence of a valid, enforceable, and as-yet-unpaid fine ordered by the judicial branch.  Futerfas's candid acknowledgement that the executive branch had this authority based on this Court's oral pronouncement simply cannot be squared with his broader assertion that the oral pronouncement was somehow not binding on him or his client until reduced to writing.

Futerfas's assertion that the government is to blame because it did not request an "interim judgment" and then execute on the fine using "restraining orders and other devices" is also without merit. (Ltr. at 3). A district court's order to pay a fine is, as a matter of law, self-executing and does not require any enforcement action by the Executive Branch. Title 18, United States Code, Section 3611 provides that "[a] person who is sentenced to pay a fine . . . shall pay the fine . . . as specified by the Director of the Administrative Office of the United States Courts." 18 U.S.C. § 3611 (emphasis added). Although the executive branch is empowered to collect on an unpaid fine following receipt of certification from the judicial branch, see id. § 3612, it is no more required to do so than it is to seek an arrest warrant to enforce a court-ordered term of incarceration.

But Futerfas takes this argument even further, asserting that the funds he disbursed at Gushlak's direction would not have been subject to this Court's order even after the written judgment unless and until the executive branch initiated an enforcement action. He asserts that Gushlak's funds would have been subject to the Court-ordered fine only if "the government initiated the appropriate mechanism to secure the judgment and available assets belonging to the client." (Ltr. at 4). This argument is utterly inconsistent with the relevant statutes and demonstrates Futerfas's disingenuity. No doubt this Court and other federal judges across the country would be surprised to learn that their orders and judgments are without effect unless and until the executive branch seeks to enforce them.[2]

Futerfas's argument that he had an ethical obligation to disburse Gushlak's funds even after this Court's oral pronouncement of sentence is absurd. (Ltr. 5). As Futerfas is well aware, he is an officer of the court and, accordingly, he is "required to obey the court's orders and is subject to the imposition of sanctions for disobedience." Jones v. Rivers, 338 F.2d 862, 873 (4th Cir. 1964). It is among the basic principles of attorney conduct that attorneys' "duty to their clients cannot override their duty to respect the system of justice, including court rules and orders." Wagner v. Williford, 804 F.2d 1012, 1017–18 (7th Cir. 1986); see also Polansky v. CNA Ins. Co., 852 F.2d 626, 632 (1st Cir. 1988) ("Too often a lawyer loses sight of his primary responsibility as an officer of the court. . . . Deceptions, misrepresentations, or falsities can only frustrate that goal and will not be tolerated within our judicial system."). For this reason, the New York State Rules of

---

[2] Prof. David Carlson, a bankruptcy expert, and Michael Ross, a purported "ethics authority," both appear to share Futerfas's misunderstanding of this Court's sentencing authority. Carlson asserts, for example, that Futerfas was not prohibited from disbursing Gushlak's funds because "the United States government had no judicial lien or injunctive restraint that pre-existed Mr. Futerfas'[s] distributions to the designated recipients." (Carlson Decl. at 2). Ross asserts that this Court's oral imposition of sentence did not serve as a "restraint" on the disbursement of Gushlak's funds. (Ross Decl. at 4). Both purport to believe that orders issued by federal judges require executive branch action to have effect.

Hon. Nicholas G. Garaufis
June 24, 2019
Page 5

Professional Conduct require a lawyer to take remedial measures, including, if necessary, disclosure to the Court, if he knows a person intends to engage in criminal or fraudulent conduct related to a proceeding.  See N.Y.R. Prof. Conduct 3.3(a).  The rules also provide that a "lawyer may refuse to aid or participate in conduct that the lawyer believes to be unlawful, even though there is some support for an argument that the conduct is legal." N.Y.R. Prof. Conduct 1.2(f).  Contrary to Futerfas's assertion, his obligation under the Rules of Professional Conduct was not to assist Gushlak in transferring his funds beyond this Court's reach, but to take remedial steps to stop him, up to and including disclosure to the Court of Gushlak's efforts to undermine this Court's lawfully imposed sentence.

Finally, Futerfas's assertion that he consulted with ethics "experts and specialists" about the disbursements does not support his argument.  First, Futerfas's consultation with a purported ethics expert is irreconcilable with his assertion that his actions were consistent with "hornbook law" or "black letter law." (Ltr. at 1; Ross Decl. ¶ 6). Second, it is clear now—and should have been no less clear to Futerfas at the time—that Ross's advice was wrong.  As Ross explains in his declaration, his advice was premised on his "understanding that no court had issued an Order stating that the Gushlak funds on deposit in Mr. Futerfas' IOLA account belonged to the Government or to anyone else." (Ross Decl. ¶ 9).  There is, of course, no authority for the assertion that a district court must specifically reference each source of funds or assets that must be used to pay a fine, or that the Court's purported failure to specifically mention particular funds means a defendant can do with them as he wishes.  Finally, Ross's advice is legally irrelevant because it is, in fact, "black letter law" that "advice of counsel is not a defense to the act of contempt." Remini, 967 F.2d at 757 (noting, however, that advice of counsel may be considered "in mitigation of punishment") (internal quotation marks omitted); Vuitton et Fils S. A. v. Carousel Handbags, 592 F.2d 126, 128 n.2 (2d Cir. 1979).

In conclusion, the government respectfully submits that Futerfas's actions violate his obligations as an officer of the Court and the New York Rules of Professional Conduct.  The government is prepared to appear for any proceedings the Court determines are warranted.

                                                    Respectfully submitted,

                                                    RICHARD P. DONOGHUE
                                                    United States Attorney

                      By:             /s/
                                                      Whitman G.S. Knapp
                                                      Kevin Trowel
                                                      Assistant U.S. Attorneys
                                                      (718) 254-6107 / 6469